|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | **JS-6** |

**CIVIL MINUTES -- GENERAL**

| Case No. | **CV 21-3287-JFW** | Date: January 21, 2022 |
|---|---|---|

Title:   In Re Debtor Peter Brown Kleidman
         Peter Brown Kleidman -v- Hilton and Hyland Real Estate, Inc.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| **Shannon Reilly** | **None Present** |
|---|---|
| **Courtroom Deputy** | **Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER AFFIRMING BANKRUPTCY COURT'S AUGUST 21, 2020 JUDGMENT, MARCH 31, 2021 ORDER DENYING MOTION TO RECONSIDER SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, AND APRIL 5, 2021 AMENDED JUDGMENT

On April 16, 2021, Appellant Peter Brown Kleidman ("Appellant" or "Debtor") filed an appeal from the United States Bankruptcy Court's August 21, 2020 Judgment, March 31, 2021 Order Denying Motion to Reconsider Summary Judgment in Favor of Defendants, and April 5, 2021 Amended Judgment. On October 29, 2021, Appellant filed his Opening Brief. On November 29, 2021, Appellees Hilton & Hyland Real Estate, Inc., Joshua Altman, and Matthew Altman (collectively, "Appellees") filed their Brief. On December 27, 2021, Appellant filed a Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's January 10, 2021 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**

The Bankruptcy Court's August 21, 2020 Judgment, March 31, 2021 Order Denying Motion to Reconsider Summary Judgment in Favor of Defendants, and April 5, 2021 Amended Judgment at issue on this appeal were entered in an adversary proceeding that was commenced on January 30, 2017, when Appellant filed his original Complaint against the Appellees. Since the commencement of the adversary proceeding, Appellant filed four different versions of his Complaint, conducted extensive discovery, and filed numerous motions. Indeed, the extraordinary

number of motions filed by Appellant resulted in the Bankruptcy Court granting in part the Appellees' Motion for an Order Requiring Plaintiff to Seek Leave of Court Before Filing Any Further Motions ("Motion Requiring Leave").  At the time the Appellees filed their Motion Requiring Leave, Appellant had filed five motions for leave to amend his Complaint and fourteen discovery motions.  In light of the extensive record in the adversary proceeding, the parties are well aware of the factual and procedural history of this matter and the Court will only discuss those facts necessary to resolve the instant appeal.

### A.   The Parties

Appellant is a sophisticated and experienced businessman who graduated from Cambridge University with a Ph.D. in mathematics and worked for several years at Goldman Sachs, Bankers Trust, Dresdner Bank AG, ABN AMRO Bank and HSBC Bank, principally as a financial analyst.  In the early 2000s, Appellant began purchasing real property in Southern California, including properties that he "flipped" for a profit.  For example, Appellant purchased the property located at 21942 Pacific Coast Highway, Malibu, California for $2.9 million, renovated the property, and then sold it for approximately $13.4 million.  Appellant also purchased the property located at 22420 Pacific Coast Highway, Malibu, California for $15.5 million, renovated the property, and then sold it for approximately $18.9 million.

Hilton & Hyland Real Estate, Inc. ("Hilton & Hyland") is a luxury real estate brokerage firm located in Beverly Hills, California.  Joshua Altman and Matthew Altman (the "Altmans") were real estate agents with Hilton & Hyland until approximately 2015.

### B.   The Property

In 2006, Appellant purchased the property located at 9380 Sierra Mar Drive, Los Angeles, California (the "Property"), which is the subject of the adversary proceeding.  In May 2010, the Property was appraised at $4.25 million.  In 2011, Appellant signed a listing agreement with Sun Heritage Real Estate ("Sun Heritage"), and listed the Property for $4.2 million.  In February 2012, Appellant obtained an appraisal that indicated that the current value of the Property was only $3.8 million, noting that the "[i]nterior finish does not match the quality of the basic construction," and advising that "[m]ost buyers of this home will look to remodel most of the interior with a new kitchen, bathrooms, flooring and HVAC" because "[t]here is functional obsolescence not only associated with the pool and spa but with the interior improvements."  As a result of the appraisal, Appellant reduced the price of the Property to $3.9 million.  Although Appellant received multiple offers, they were insufficient to satisfy the existing liens and those offers were rejected by the secured lenders.

### C.   Bankruptcy

On February 8, 2012, Appellant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Appellant's Bankruptcy Schedules valued the Property at $3.8 million.  On October 18, 2012, Appellant amended his Bankruptcy Schedules and increased the valuation of the Property to $4.2 million.  During the pendency of his bankruptcy, Appellant contacted multiple real estate agents about selling the Property, but he declined to retain any of them because they advised Appellant the Property could not be sold for more than the existing liens.  Appellant

ultimately decided to list the Property with Dustin Cumming, Aaron Kirman, and Danelle Lavin (the "Listing Agents") at Hilton & Hyland because they advised Appellant that they believed that they could market and sell the Property and avoid a short sale.  On December 1, 2012, Appellant and Hilton & Hyland entered into a Residential Listing Agreement ("RLA") to list the Property for $5,495,000.  On January 24, 2013, Appellant filed an application to employ the Listing Agents and Hilton & Hyland to sell the Property (the "Employment Application") with the Bankruptcy Court.  On January 30, 2013, the Bankruptcy Court approved the Employment Application.

Hilton & Hyland advertised the Property in The Los Angeles Times, the MLS Broker Caravan, and Christie's International Real Estate syndicates.  The Listing Agents held "open houses" and showed the Property eighteen times, including to developers and "flippers."  The Listing Agents kept Appellant informed of the showings and buyer interest, and Appellant assisted Hilton & Hyland in marketing the Property by providing the Listing Agents with a property survey and floor plans for the then-existing house on the Property, which Appellant and the Listing Agents believed would be of interest to developers and flippers.

Appellant received multiple offers for the Property that were below the listing price, including an all cash offer of $5,000,000 by Bruce Makowsky ("Makowsky") on January 20, 2013.  In light of the offers, Appellant determined that if he could sell the Property for $5,300,000, he would be able to cover all the liens, commissions, closing costs, and realize a small profit.  As a result, Appellant countered all of the offers at $5,299,000.  Although the potential buyers refused to accept Appellant's counteroffer of $5,299,999[1], Makowsky eventually agreed to purchase the Property for $5,300,000 with no contingencies.  Appellant filed a motion seeking authority to sell the Property to Makowsky for $5,300,000 (the "Sale Motion") with the Bankruptcy Court.  After a hearing, the Bankruptcy Court granted the Sale Motion and approved the sale of the Property to Makowsky.  The sale closed on February 1, 2013.  The bankruptcy estate received $122,644 after paying closing costs, liens, and commissions.  At all times, Makowsky was represented by the Altmans, who were agents with Hilton & Hyland.  Although the Altmans and the Listing Agents were all agents with Hilton & Hyland, the Listing Agents did not represent or work with Makowsky and the Altmans did not represent or work with Appellant.  Moreover, the fact that both parties to the transaction were represented by agents with Hilton & Hyland was disclosed to Appellant and Makowsky.

In May 2014, after extensive renovations to the interior and exterior of the Property, Makowsky sold the Property for $19,000,000.

In July 2016, the Bankruptcy Court entered a final decree and closed Appellant's bankruptcy case.

### D.     The Adversary Proceeding

On August 1, 2016, after Appellant learned that the Property has sold in May 2014 for $19,000,000, Appellant filed a Complaint against Appellees.  Following a series of amendments, on January 19, 2018, Plaintiff filed his Third Amended Complaint ("TAC"), alleging claims for: (1)

---

[1] The next highest offer was $4,600,000.

breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) breach of the duty of fairness; and (4) breach of the duty of care.  On July 26, 2018, the Bankruptcy Court granted in part Appellees' Motion to Dismiss the TAC, and dismissed the claims for aiding and abetting breach of fiduciary duty and any claim based on the alleged duty by Appellees to "achieve as high a price as possible" for Appellant.  As a result, Appellant's remaining claims were based on allegations that Appellees failed to disclose that: (1) a "fully-renovated version of the property would be valued in the region of $15 million" and that the valuation in the "flippers' pool" of buyers (versus buyers looking for a move-in ready house) was around $8,000,000 to $9,000,000; (2) that Appellees had a pre-existing agreement to represent Makowsky in the resale of the Property; and (3) that the Appellees had hoped to represent Makowsky in other transactions and, as a result, favored Makowsky's interests over those of Appellant.

On February 27, 2019, Appellees filed a Motion for Summary Judgment with respect to Appellant's remaining claims.  After the Motion for Summary Judgment was fully briefed and after lengthy oral arguments by the parties, on August 20, 2020, the Bankruptcy Court granted Appellees' Motion for Summary Judgment and issued lengthy and detailed Findings of Facts and Conclusions of Law in support of its Order granting the Motion for Summary Judgment.[2]  In its Order, the Bankruptcy Court concluded that: (1) Appellees did not breach any fiduciary duty to Appellant; (2) Appellant failed to present any evidence that Appellees breach any duty of care owed to him; (3) Appellant did not meet his burden of proving that he incurred any damages; and (4) judicial estoppel barred Appellant from complaining that the Property was not adequately marketed or that the sale price was unfair.  On August 21, 2020, the Bankruptcy Court entered Judgment in favor of Appellees in the adversary proceeding.

On September 4, 2020, Appellant filed an Amended Motion for Relief under FRBP 9023, FRBP 7052, FRBP 9024 and LBR 9013-4 ("Motion to Reconsider"), arguing that he should be granted relief from the Bankruptcy Court's Summary Judgment Order.  Specifically, Appellant argued that: (1) Appellant was not afforded due process because the Bankruptcy Court made factual findings and conclusions of law on certain matters that were not raised in the Motion for Summary Judgment, thereby depriving Appellant of an opportunity to respond[3]; (2) there was insufficient evidence to support certain Findings of Fact[4]; (3) the Bankruptcy Court made various errors of law.[5]  On March 31, 2021, the Court issued a lengthy twenty-four page Order denying

---

[2] The Bankruptcy Court also entered its Order re Evidentiary Objections related to Appellees' Motion for Summary Judgment.

[3] For example, Appellant took issue with the Bankruptcy Court's description of him as "a sophisticated and experienced businessman."

[4] For example, Appellant argued that the declarations and deposition testimony cited by the Bankruptcy Court did not support its Finding of Fact that the "Listing Agents kept Kleidman informed of the showings and buyer interest" because those declarations and deposition testimony did not expressly state that the Listing Agents were truthful in the information they gave to Appellant.

[5] For example, Appellant argued that the Bankruptcy Court incorrectly concluded that the doctrine of judicial estoppel applied.

Appellant's Motion to Reconsider.  In addition, on April 2, 2021, the Bankruptcy Court issued Amended Findings of Fact and Conclusions of Law clarifying certain issues raised by the parties. On April 5, 2021, the Bankruptcy Court entered an Amended Order granting Appellees' Motion for Summary Judgment and an Amended Judgment.

Appellant then filed this appeal.

**II.    Issues on Appeal**

Appellant contends that the "main issues"[6] presented for review on appeal are:

1.  Whether Appellees breached their duties to: (a) further Appellant's interests; (b) disclose their opinions on the value of the Property; (c) research and investigate the value of the Property; (d) counsel and advise Appellant; and (e) disclose the extent of their relationship with Makowsky and Makowsky's real estate activities.

2.  Whether Hilton & Hyland misrepresented its opinion on the value of the Property.

3.  Whether judicial estoppel applies.

4.  Whether Appellant should be allowed to amend his Complaint regarding fiduciary duty claims.

5.  Whether Appellant "was afforded due process regarding Count 1" (sanctions for violation of 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014(a)).

6.  Whether Count 7 (disgorgement) is collaterally estopped.

7.  Whether Appellant should be allowed to amend Count 7 (disgorgement) to plead a different theory based on the same facts.

8.  Whether "numerous discovery orders should be reversed or modified."

**III.    Legal Standards**

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties.  When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions.  *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment,

---

[6]  According to Appellant, there are also "numerous sub-issues" which are not identified. *See* Appellant's Opening Brief (Docket No. 19), 16:1-17.

order, or decree or remand with instructions for further proceedings." Federal Rules of Bankruptcy Procedure 8013.  Generally, a district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law de novo.'" *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 787 F.2d 1352, 1357 (9th Cir. 1986) (*quoting Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)).  "Mixed questions of law and fact are reviewed de novo." *Beaupied v. Chang* (*In re Chang*), 163 F.3d 1138, 1140 (9th Cir.1998).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) *(quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Savage v. Greene* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009).  "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

In addition, "[a] bankruptcy court's denial of a motion for reconsideration is reviewed for an abuse of discretion." *In re Negrete*, 183 B.R. 195, 197 (9th Cir. B.A.P. 1995).  "The abuse-of-discretion standard requires a reviewing court to conduct a two-step inquiry: (1) determine de novo whether the lower court identified the correct legal rule to apply to the relief requested and (2) ascertain whether the bankruptcy court's application of the legal standard was illogical, implausible or without support in inferences that may be drawn from the facts in the record.  *In re Alarez*, 2018 WL 5099265 (C.D. Cal. Oct. 18, 2018) (internal citations omitted).

Moreover, a bankruptcy court's granting or denying a motion for summary judgment is reviewed de novo.  *Jones v. Royal Admin. Services, Inc.*, 887 F.3d 443, 447 (9th Cir. 2018); *Guerin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002).  The district court, viewing the evidence in the light most favorable to the nonmoving party, must determine if there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law.  *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 916 (9th Cir. 2002).  In addition, the district court may affirm summary judgment "on any ground supported by the record." *Am. Federation of Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 981 (9th Cir. 2018) (internal citations omitted).  "Evidentiary rulings made in the context of summary judgment are reviewed for an abuse of discretion." *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Furthermore, a bankruptcy court's dismissal for failure to state a claim upon which relief can be granted is reviewed de novo.  *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146 (9th Cir. 2019).

Finally, discovery rulings – including an order denying a discovery request, an order limiting the scope of discovery, an order cutting off discovery, and an order denying a request to reopen discovery – are reviewed for abuse of discretion. *Ingham v. United States*, 167 F3d 1240, 1246 (9th Cir. 1999); *see Dichter-Mad Family Partners, LLP v. United States*, 709 F3d 749, 751 (9th Cir. 2013) (holding that "broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant") (internal citations omitted).

## IV.     Discussion

In his appeal, Appellant argues that the Bankruptcy Court erred in granting Appellees' Motion for Summary Judgment and denying his Motion to Reconsider. Appellees argue that the Bankruptcy Court correctly decided the Motion for Summary Judgment and the Motion tor Reconsider. Appellees argue that the Bankruptcy Court gave Appellant more than ample opportunity over the course of several years to amend his claims and gather the necessary evidence to support his claims in discovery, and Appellant did not prevail simply because his case lacked merit.

### A.     The Bankruptcy Court Did Not Err in Granting Appellees' Motion for Summary Judgment and Denying Appellant's Motion to Reconsider

In granting Appellees' Motion for Summary Judgment, the Bankruptcy Court entered exhaustive Findings of Facts and Conclusions of Law that were detailed, well reasoned, and fully supported by the evidence and the law. The Bankruptcy Court also carefully considered only the admissible evidence submitted both in support of and in opposition to the Motion for Summary Judgment, as evidenced, in part, by the detailed rulings in the Bankruptcy Court's Order re: Evidentiary Objections. In addition, the Bankruptcy Court only granted Appellees' Motion for Summary Judgment after Appellant was given multiple opportunities to amend his Complaint, after Appellant was given ample opportunity to pursue the discovery he thought was necessary to prove his claims (including bringing more than a dozen discovery motions), after the Motion for Summary Judgment was fully briefed, and after the Bankruptcy Court heard lengthy oral arguments. In addition, in denying Appellant's Motion to Reconsider, the Bankruptcy Court entered a twenty-four page Order explaining in even greater detail the basis for its decision granting Appellant's Motion for Summary Judgment. The Bankruptcy Court also entered Amended Findings of Fact and Conclusions of Law to clarify its decision.[7]

Having considered the arguments of the parties and having reviewed the entire record, the Court concludes that the Bankruptcy Court did not err in granting Appellees' Motion for Summary Judgment or denying Appellant's Motion to Reconsider. The Court concludes that the Bankruptcy Court's Amended Findings of Fact were fully supported by the evidence and that the Bankruptcy Court correctly applied the law to those facts. Indeed, the majority of Appellant's arguments on appeal are based on Appellant's misunderstanding of the relevant statutory and case law and lack of knowledge of legal procedure. For example, in his Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment, Plaintiff failed to respond to the majority of Appellees' material facts. Specifically, Appellant responded to only twenty-six of seventy-one material facts and only offered evidence that supported eight of his responses. In his other responses, Appellant simply stated that he did not need to "provide rebuttal evidence since the evidence cited does not prove the facts claims." Although the Bankruptcy Court explained to Appellant in detail the burden of proof and burden of persuasion on a motion for summary

---

[7] In the Amended Findings of Fact and Conclusions of Law, the Bankruptcy Court changed some references to "Hilton & Hyland" to "Defendants" to clarify that those findings and conclusions applied to the Altmans as well as Hilton & Hyland.

judgment, Appellant continued to argue to the Bankruptcy Court and in this appeal that he was not required to put forth evidence in support of his claims and in opposition to summary judgment.

Similarly, many of Appellant's arguments are based on a misunderstanding of the Bankruptcy Court's very clear and very detailed findings, including the Bankruptcy Court's findings on the fiduciary duty issue. For example, in his Motion to Reconsider, Appellant argued that the Bankruptcy Court erroneously concluded that the Altmans only owed a fiduciary duty to Makowsky and not Appellant. However, as the Bankruptcy Court explained, in relevant part, in its Order denying Appellant's Motion to Reconsider:

> Nothing in the Findings and Conclusions states that the Altmans owed fiduciary duties only to [Makowsky] or, conversely, that the Altmans owed no fiduciary duties to [Appellant]. Nor did [Appellees'] MSJ assert that the Altmans owed no fiduciary duties to [Appellant] or only owed duties to [Makowsky]. In other words, there was no dispute that [Appellees] owed a fiduciary duty to [Appellant]. Nothing in the Findings and Conclusion[s] holds that the Altmans did not owe a fiduciary duty to [Appellant].

The Bankruptcy Court explained that "[t]he principal disputes between the parties raised by the MSJ are the scope of the fiduciary duty owed" to Appellant by the Appelles, "and whether [Appellees] breached those duties." In addition, the Bankruptcy Court explained that Appellees had offered "voluminous supporting evidence that they did not breach any of their fiduciary duties to [Appellant], acted in good faith towards him and made full and complete disclosure to him of all requisite facts" and Appellant failed to offer any admissible evidence to the contrary. In part, the Bankruptcy Court relied on the testimony of Alan D. Wallace ("Wallace"), Appellees' expert on the duty of care, who testified that "neither Hilton & Hyland, Joshua Altman nor Matthew Altman's conduct in connection with the listing and sale of [Appellant's] property during his Chapter 11 bankruptcy fell below the standard of care for real estate agents or brokers in this community." Wallace also testified that beyond disclosing the dual agency, "there was nothing further for [Appellees] to disclose to the seller about their relationship with the buyer at the time of the transaction." As the Bankruptcy Court noted, Appellant failed to offer any expert testimony to rebut Wallace's testimony and, as a result, Appellant failed to demonstrate that there were any genuine issues of fact for trial. As a result, the Bankruptcy Court "ultimately determined that [Appellees] did not breach any of their fiduciary duties to [Appellant]."

Accordingly, the Court concludes that the Bankruptcy Court did not err in granting Appellees' Motion for Summary Judgment or denying Appellant's Motion to Reconsider, and the Court affirms the Bankruptcy Court's rulings on these motions.

### B.     The Bankruptcy Court Did Not Err in Its Other Rulings

Although Appellant raises issues with twelve other orders entered by the Bankruptcy Court, including nine orders related to discovery disputes, two orders regarding motions to dismiss, and one scheduling order, Appellant failed to identify any of these orders in his Notice of Appeal in violation of Federal Rule of Bankruptcy Procedure 8003(a)(3)(B) and failed to include any of the discovery orders, motions, or oppositions in the excerpts of the record. Because these orders were not identified in the Notice of Appeal or included in the excerpts of the record, it is virtually impossible for the Court to determine which orders or what issues Appellant has appealed. For

example, in his Opening Brief, Appellant identifies the discovery orders that he argues are erroneous only as "#319," "#199," "#318," "#160," "#332," "#333," "#382," "#460," and "#315," which appear to refer to docket numbers on the Bankruptcy Docket.  Appellant also argues that the deadline to amend the pleadings in the Bankruptcy Court's scheduling order was "too early," but fails to provide the Court with any basis to evaluate his argument, including failing to state if he sought leave from that deadline. With respect to the motions to dismiss, Appellant does not discuss specific orders granting Appellees' Motions to Dismiss, but, instead, argues that the dismissal of Count 1 violated his due process rights and that he should have been granted leave to amend Count 7.  Accordingly, the Court concludes that none of these issues are properly before this Court on this appeal and Appellant's appeal of these orders is dismissed.

In addition, even if these orders were properly before this Court, orders that are not material to the judgment are not appealable.  *See Baker v. Dykema Gossett, LLP*, 776 Fed. Appx. 485 (9th Cir. 2019); *see also* 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3905.1 n.29 ("'Orders that could not have affected the outcome, *i.e.*, orders not material to the judgment, are not appealable'" and "[a] ruling that could not have affected the judgment may be denied review for reasons parallel to harmless error reasoning") (*quoting Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 540 (9th Cir.1996)).  In this case, Appellant has failed to explain or demonstrate that a different resolution of the issues decided in these orders would have materially affect the outcome of Appellant's bankruptcy.  As a result, these orders are not appealable.  *See, e.g., Woodroffe v. Curtis*, 836 Fed. Appx. 636 (9th Cir. 2021) (in appealing the district court's order granting summary judgment in favor of the defendants, the plaintiff argued that he was denied discovery and the Ninth Circuit rejected that argument because the plaintiff had not "identified what discovery he was denied or how he was prejudiced").

Moreover, even if these orders were appealable, Appellant has failed to demonstrate that the Bankruptcy Court abused its discretion in making any of the rulings in its discovery or scheduling orders and, as a result, the Court affirms the Bankruptcy Court's decisions.  *See, e.g., Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (holding that discovery rulings must be affirmed unless the plaintiff makes "the clearest showing" of "actual and substantial prejudice" from the denial of discovery).  In addition, the Court affirms the Bankruptcy Court's rulings on Appellees' Motions to Dismiss.

## V.    Conclusion

For all the foregoing reasons, the Bankruptcy Court's August 21, 2020 Judgment, March 31, 2021 Order Denying Motion to Reconsider Summary Judgment in Favor of Defendants, and April 5, 2021 Amended Judgment are **AFFIRMED**, and this appeal is dismissed with prejudice.

IT IS SO ORDERED.